NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**LINDA WISEMAN,**

                **Plaintiff,**

**v.**                                          **Case No. 6:17-cv-2209-Orl-37KRS**

**COMMISSIONER OF SOCIAL SECURITY,**

                **Defendant.**

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the Complaint filed by Plaintiff, Linda Wiseman, seeking review of the final decision of the Commissioner of Social Security denying her claim for social security benefits, Doc. No. 1, the answer and certified copy of the record before the Social Security Administration ("SSA"), Doc. Nos. 14, 16, and the parties' Joint Memorandum, Doc. No. 20.[1]

---

[1] In the Scheduling Order, I required counsel for the parties to submit a single, Joint Memorandum with an agreed statement of the pertinent facts in the record. Doc. No. 17. Counsel for Plaintiff was ordered to identify and frame, in a neutral fashion, each of the disputed issues raised as grounds for reversal and/or remand, and counsel for the Commissioner was required to respond to each of those issues in the format set forth in the Scheduling Order. *Id.* at 4.

NOT FOR PUBLICATION

## PROCEDURAL HISTORY.

In 2011, Wiseman filed applications for benefits under the Federal Old Age, Survivors and Disability Insurance Programs ("OASDI"), 42 U.S.C. § 401, *et seq.*, and under the Supplemental Security Income for the Aged, Blind and Disabled Program ("SSI"), 42 U.S.C. § 1381, *et seq.* She alleged that she became disabled on January 1, 2010. R. 155, 363-71.

After her applications were denied originally, on reconsideration and after a hearing before an Administrative Law Judge ("ALJ"), Wiseman asked the Appeals Council to review the ALJ's decision. The Appeals Council granted the request for review, vacated the ALJ's decision and remanded the case for further proceedings. R. 45-46.

After remand, the ALJ held another hearing on October 12, 2016. Wiseman, accompanied by an attorney, and a vocational expert ("VE") testified at the hearing. R. 453-75.

After considering the hearing testimony and the evidence in the record, the ALJ issued another decision. R. 15-24. The ALJ found that Wiseman was insured under OASDI through September 30, 2013. R. 18. The ALJ determined that Wiseman had not engaged in substantial gainful activity since the alleged disability onset date. *Id.*

The ALJ found that Wiseman had the following severe impairments: diabetes mellitus; diabetic neuropathy; anterior ischemic neuropathy of the left eye; and, plantar fibroma of the right foot. *Id.* The ALJ determined that Wiseman did not have a severe mental impairment. R. 20. The ALJ concluded that Wiseman did not have an impairment or combination of impairments that met or equaled an impairment listed in the SSA regulations. *Id.*

The ALJ found that Wiseman had the residual functional capacity ("RFC") to perform light work, except that she could not perform fine, detailed work. *Id.* In making this assessment, the

ALJ found that Wiseman's statements about her functional limitations were not entirely consistent with the evidence in the record. R. 21. The ALJ specifically cited evidence that Wiseman was not prescribed strong medication and that medication controlled her symptoms when she took it. Her treatment was conservative. Her mood and affect were stable, and she did not report side effects from medication. R. 23.

The ALJ found that Wiseman could perform her past work as retail services clerk, server or cashier II. R. 23. Therefore, the ALJ concluded that Wiseman was not disabled. R. 24.

Wiseman requested review of the ALJ's decision by the Appeals Council. R. 142. On October 26, 2017, the Appeals Council found no reason to review the ALJ's decision. R. 7-10.

Wiseman now seeks review of the final decision of the Commissioner by this Court.

## JURISDICTION AND STANDARD OF REVIEW.

Wiseman having exhausted her administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3). A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

## SUMMARY OF THE FACTS.

After a thorough review of the record, I find that the facts are generally adequately stated in the ALJ's decision and the Joint Memorandum, which statement of facts I incorporate by reference. Accordingly, I will only summarize facts pertinent to the issues raised to protect Wiseman's privacy to the extent possible.

NOT FOR PUBLICATION

Wiseman was born in 1958. R. 363. She completed school through the twelfth grade. R. 433. The VE classified her past work to include retail salesclerk, waitress, and cashier, which were light exertional jobs. R. 449. Wiseman testified that she was unable to perform her job as a cashier because she could not stand for long periods of time. R. 435.

Wiseman testified that her biggest problem was with her feet. She had a tumor on the bottom of her right foot that made it feel like she was standing and walking on Band-Aids. Her feet were freezing all the time, and they caused her constant pain. She had to have an acid burn on her left foot. R. 438, 460-61. Her hands were cold and swollen due to diabetes. R. 447. She also had lower back pain and depression. R. 438-39. She had a blockage in her left eye. R. 461. She took medication for foot pain, diabetes, anxiety, ADHD, sleep and depression. R. 439-40, 462-64. Metformin for diabetes made her nauseous and tired and made her vision blurry; the medication was switched to Glipizide. Xanax also made her tired. R. 441, 462, 464.

Wiseman estimated that she could sit only 10 to 15 minutes due to back pain. She could stand only a couple of minutes due to pain in her feet, lightheadedness and dizziness. She could walk about half a block. R. 446-47. She estimated that she could lift 10 to 15 pounds. Her grip strength was not good. R. 447, 462.

Wiseman could prepare simple food, but she did not perform household chores or go grocery shopping. R. 444, 466-67. She could care for her personal hygiene. R. 466. Family and friends visited her at her home. She watched television, but she had difficulty seeing a computer screen. R. 444. She cried a lot, could not focus and could not sit still. R. 446.

The medical records reflect that on May 19, 2011, Wiseman sought emergency department treatment for pain in her left foot beginning four days earlier. R. 229. The diagnosis was hallux valgas (bunion). R. 230, 236.

On November 23, 2011, Wiseman was treated by Krishna Vara, M.D., at Melbourne Urgent Care for chronic low back pain radiating down her right leg, which was aggravated with prolonged standing, walking and sitting. R. 241. Dr. Vara observed that Wiseman's gait was normal, and her motor strength was 5/5 in upper and lower extremities. Dr. Vara opined that there were no significant objective findings and that no functional limitations were recommended. R. 242.

Laura Hall, Psy.D., examined Wiseman on November 28, 2011 at the request of the SSA. Wiseman reported that she was depressed, had disturbed sleep and decreased interest in activities, poor concentration and feelings of worthlessness. Upon examination, Dr. Hall observed that Wiseman walked without assistance. Her mood was sad, and she sometimes became tearful. After administering some tests, Dr. Hall opined that Wiseman was alert and oriented to person, place, time and situation. Dr. Hall recommended that Wiseman consult with her physician regarding whether medication would be useful, and she recommended that Wiseman participate in therapy. R. 244-47.

Professionals at the Eau Gallie Medical Center monitored and treated Wiseman's diabetes. R. 268-75, 285-90.

Amir Mirsajadi, M.D., a psychiatrist, treated Wiseman from April 2012 through August 2016. At the initial examination, he noted that Wiseman's affect/mood was anxious and that she had poor concentration. His diagnoses were Anxiety Disorder NOS and ADHD NOS. He prescribed Xanax and changed the dosage of Adderall. On April 25, 2012, Dr. Mirsajadi noted

that Wiseman was less anxious and that she was doing well on medication with no side effects. He adjusted her medication. On July 25, 2012, Weisman was stable and doing fairly well on medication. On October 24, 2012 and thereafter, Dr. Mirsajadi noted that Wiseman continued to do well on medication with no side effects. R. 263-67, 276-79, 340-57.

Jared Moyles, DPM, evaluated Wiseman on January 24, 2014 for bilateral foot pain. Wiseman described a soft tissue mass on the plantar aspect of her right foot that was annoying but not painful. She also reported burning and numbness in both feet. She had recently been diagnosed with diabetes. Upon examination, Dr. Moyles observed that the dorsalis pedis and posterior tibial pulses were absent in both feet.[2] Light touch and vibratory sensation was diminished in both lower extremities. Dr. Moyles observed a significant nodule embedded in the medial aspect of the plantar fascia of the right foot. Muscle strength in the lower extremities was 5/5 and range of motion was within normal limits. His assessments were plantar fibroma as well as diabetes with neurological manifestations and peripheral circulatory disorders. He recommended use of a pad in the area of the fibroma to prevent pain on weight bearing. He prescribed medication for neuropathy. R. 280-81.

On February 10, 2016, Vrinda S. Hershberger, M.D., conducted an eye examination. Dr. Hershberger found no evidence of diabetic retinopathy. The diagnosis was non-arteritic ischemic optic neuropathy. R. 302-04.

---

[2] The absence of dorsalis pedis and/or posterial tibial pulses are predictors of vascular complications in patients with Type 2 diabetes. Kamel Mohammedi, *et al.*, *Absence of Peripheral Pulses and Risk of Major Vascular Outcomes in Patients With Type 2 Diabetes*, Diabetes Care (Dec. 2016), http://care.diabetesjournals.org/content/39/12/2270.

On February 16, 2016, Wiseman sought emergency department care for nausea and vomiting. It was determined that she was in diabetic ketoacidosis and had viral gastroenteritis. A treatment note reflects that Wiseman did not appear to test her blood sugar levels at home. She had stopped taking Metformin because she stated she could not tolerate it. She was treated with insulin and IV fluids and started on Glipizide. R. 314-34.

Wiseman also was treated at the Brevard Health Alliance. In September 2016, Wiseman's foot examination was essentially normal. The diagnoses were uncomplicated diabetes mellitus, type II, uncontrolled and hyperlipidemia. R. 358-62.

During the hearing after remand, the ALJ asked the VE to assume a person of Wiseman's age, education and past work with an RFC for light work who was limited from performing fine detailed work that required perfect vision. R. 471-72. The VE testified that this person could perform Wiseman's past relevant work. R. 472. The VE further testified that before the hypothetical person reached age 55, she could perform the sedentary jobs of call-out operator, tube operator and telephone quota clerk. R. 472-73.

## ANALYSIS.

In the Joint Memorandum, which I have reviewed, Wiseman asserts three assignments of error, two of which are interrelated. She contends that the ALJ did not consider some of the findings of Dr. Moyle, which failure undermines the ALJ's conclusion that Wiseman could perform light exertional work. Because of this alleged error in the RFC, Wiseman submits that the hypothetical question to the VE was incomplete. In addition, Wiseman argues that the ALJ did not cite specific and adequate reasons to support the conclusion that her statements about her

functional limitations were not entirely consistent with the record. These are the only issues I will address.

*The RFC Assessment and Questions to the VE.*

The decision reflects that the ALJ considered the January 24, 2014 treatment record from Dr. Moyles. In the summary of this treatment record, however, the ALJ did not state that Wiseman reported burning and numbness in her feet, that light touch sensation and vibratory sensation were diminished in both of her legs and that Dr. Moyles observed that the dorsalis pedis and posterior tibial pulses were absent in both of Wiseman's feet. R. 22. Counsel for Wiseman asserts that if the ALJ had considered these facts, the ALJ would have concluded that Wiseman could not stand for 6 hours in an 8-hour workday, as is required to perform light work.

"[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision, as was *not* the case here, is not a broad rejection which is 'not enough to enable [the Court] to conclude that [the ALJ] considered [the] medical condition as a whole.'" *Barnhart*, 395 F.3d at 1211 (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)). The ALJ's recitation of the evidence in the record shows that she considered the record as a whole.

Counsel for Wiseman has offered no support for the conclusion that the facts that the ALJ did not recite from Dr. Moyles's treatment record undermine the finding that Wiseman could perform light work. Rather, as the ALJ noted, Wiseman told Dr. Moyles that the fibroma in her right foot was not painful, and examinations revealed that she had a normal gait, normal range of motion in her legs and full muscle strength (5/5) in her legs. R. 22. Dr. Moyles recommended

only padding of the right foot to prevent pain with weight bearing. Furthermore, a September 30, 2016 examination of Wiseman's feet was normal.

Therefore, I recommend that the Court find that Wiseman has not established that the ALJ erred by failing to recite all of Dr. Moyles's findings contained in his treatment note. Because Wiseman did not establish that Dr. Moyles's findings on examination undermine the RFC determination that she could perform light exertional work, the ALJ did not err by asking the VE to assume that Wiseman could perform light exertional work with the limitations stated in the RFC. *See Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1161 (11th Cir. 2004) (noting that an ALJ is not required to include limitations not supported by the record in hypothetical questions to a VE). Therefore, Wiseman's first two assignments of error are not well taken.

*Credibility*.

In the third assignment of error, counsel for Wiseman contends that the ALJ erred by making only the following conclusory, boilerplate statement to support her finding as to Wiseman's credibility:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

R. 21.

The law in this Circuit provides that once a claimant establishes through objective medical evidence that an underlying medical condition exists that could reasonably be expected to produce his or her symptoms, "all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory

findings in deciding the issue of disability." *Foote*, 67 F.3d at 1561 (citing 20 C.F.R. § 404.1529). "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Id.* at 1561-62.

Careful reading of the ALJ's decision reveals that the ALJ did not rely only on the summary statement quoted above. Rather, the ALJ additionally found as follows:

> The claimant's testimony is not consistent with her medical evidence of record. The claimant was not prescribed strong medication. When she took her medication, it controlled her symptoms. The claimant at times, was not compliant with her medication/treatment. The claimant reported no side effects from medication to her physicians. Her treatment has been conservative. The claimant did not seek medical treatment for a long period. The claimant maintains that she has been disabled since January 2010, but there are not any medical evidence of record available prior to May 2011. Her medical evidence of record is inconsistent with her [testimony about the] subjective severity of her condition.
>
> Additionally, the claimant testified that she suffers from depression and anxiety. However, between April 4, 2012 and August 10, 2016, Dr. Amir Mirsajadi treated the claimant due to complaints of depression and anxiety. During this period, the claimant was noted to be doing well on her medication. Her affect and mood was also stable. Her thought content was clear. Her memory was within normal limits. Her medication did not have any side effects. Overall, the claimant's medication regimen was controlling her mental symptoms without side effects.

R. 23 (internal citations omitted). These findings are supported by substantial evidence in the record, as set forth in the Summary of the Facts above.

Because the ALJ recited explicit and adequate reasons to support the finding that Wiseman's reports of her subjective symptoms were not entirely consistent with the record as a whole, and substantial evidence supports the reasons articulated by the ALJ, I recommend that the Court find that the third assignment of error is also unavailing.

Not for Publication

## RECOMMENDATIONS.

For the reasons stated above, I **RESPECTFULLY RECOMMEND** that the final decision of the Commissioner be **AFFIRMED**. I further **RECOMMEND** that the Court direct the Clerk of Court to issue a judgment consistent with its decision on this Report and Recommendation and, thereafter, to close the file.

### Notice.

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

**Respectfully Recommended** this 6th day of November 2018.

                      *Karla R. Spaulding*
                      KARLA R. SPAULDING
                      UNITED STATES MAGISTRATE JUDGE